Good morning. Please be seated. Draw near, but not too near. That's right. Good morning, everyone. We have four cases to be argued on the calendar today, and I am informed that all counsel are present. So we'll begin with the first case, which is 21-1385 UBS AG v. Greka. And masks are optional at the podium, counsel. You have reserved some time for rebuttal, and you may begin when you're ready. Thank you, Your Honors. May it please the Court. My name is Eric Berry for the defendant, defendant appellant, Greka Integrated, Inc. One of the things that happened below, I believe, is that the district court applied a special state court procedure, namely CPR 3213, and then applied the federal standard of review. Isn't that exactly correct? Pardon me? Isn't that exactly what the district court should have done? I don't think so. And the reason I disagree with what the district court did is, just going over the basics, under CPR 3213, no discovery, no Rule 56 statements. And that's what happened even after the removal, no discovery, no rule. But you get your Rule 56 defenses once it comes to federal court, don't you? And you filed a counterclaim, actually. District courts handle this in different ways. Sometimes they require a Rule 56 statement. But the point is that it's unfair to take the 3213 procedure and then go outside of the face of the instrument. The right thing to do would be to say 3213 is irrelevant, right? I mean, the question of what posture the parties and the court agrees, it is how you want to handle the difference between what happened in state and what happened in federal court. But we're under the federal rules of civil procedure once we're in federal court. Okay, and the federal rules of civil procedure would say that summary judgment motions are to be made after discovery. The local rules require 56.1 statements. Is there a possibility of your moving in the court if you have reason? I'm sorry, I have a lot of trouble hearing you, Your Honor. I'm sorry, I don't blame you. Is there no opportunity when you're in the district court on this procedure to go to the district court and make a specific showing as to why you need discovery? I think we did it. But there is that possibility. Well, you have the First Amendment right to submit whenever you want. Unless you have Rule 56D, which is expressly available to argue that you need discovery before summary judgment should be made. There was not, concededly, there was not a citation to Rule 56D. However, the affidavits and the memorandum of law pointed to specific information or documentation that was lacking. And in particular, the affidavits specifically said there's a $14 million difference between the way we calculate damages. Right. You point to differences on damages, and you do express a need for discovery with respect to that. Nothing on liability, as I see the record. Well, but that's correct. I mean, I think you're right. I mean, at least looking at the citations provided in your brief, if there's something- You know, the distinction between liability and damages is not one I always understand. And this may be one of those cases. We say we're liable if everything, all the I's are dotted, all the T's are crossed, all the defaults happen. They are enforceable at that point in time. All of which we don't think were correct. But we thought that you needed to look at- We allege in our opposition that it seemed like UBS was relying on the trustee credit agreements. And then after the back and forth, which are subsequent credit agreements, enter between the bankruptcy trustees and UBS. After the back and forth between the magistrate and the district court judge. Judge Stanton, on page 33 of the special appendix, specifically says that he looked at the trustee credit agreements and found that if you compare them to the original credit agreements, the guarantor is not liable for this. Now, the reason that's important is because- He relied on the 2.02 waiver with respect to that conclusion, correct? Right. This was on reconsideration, not the original- Okay, but he needed to reach that issue. Once he reaches that issue, by reference to the trustee credit agreements, we're squarely within the PDL biopharma decision by the first department. And you cannot just isolate one aspect of the trustee credit agreements. If one part of the trustee credit agreements is admissible on summary judgment, the entirety has to be. Including in particular, there is a provision that's set forth at 1326 in the record of trustee credit agreements that strips the chapter 11 trustee of its statutory obligation to propose a plan of reorganization if it's possible. That's gone. That UBS is seated and given veto power over this. And no matter how broadly you want to read section 2.01, the continuing guarantee section- 2.02. It is limited by the bounds of law. It's expressly- 2.02. It's expressly limited by the bounds of law. And if you look in, there's a subsequent provision that seems to do the same thing, which is at 68 in the record. And it too is limited by the bounds of law. Stripping the trustee of its right to propose a reorganization plan is beyond the bounds of law. And UBS cannot be held to have agreed with it. So that brings me to the second point. What the trustee did and what UBS did in the bankruptcy was to propose a ready liquidation because the trustee was stripped of its power to propose a reorganization. In doing so, and in order to do so, the trustee rejected- the UBS, through expert witnesses, rejected the notion of going concern values. It referred to the oil industry, the energy industry's PV10 values. We contend that that violated an implied covenant of fair dealing. So help me understand that, because as I understand it, the borrowers made a representation through the security certificate. The- Solvency certificate. Solvency certificate. That they're solvent and insisted upon, or at least requested, that PV10 value be the methodology of valuing the assets. That's a representation from the borrowers to UBS, that I understand UBS could rely on a representation of solvency. But you want to argue that it somehow binds UBS, that UBS made a representation by accepting that representation? I don't fully understand that argument. Okay, so let's- Okay, there are representations, and there are negotiated representations. Here, we have shown, it's indisputable, that this is a negotiated representation. We are, for UBS's comfort, representing solvency. But we're only representing solvency on a PV10 basis or a going concern basis. Now, if you look at the entirety of the credit agreements, the solvency provision specifically replicates the certificate, the solvency certificate. The definition of PV10 specifically endorses the means that- Excuse me. Excuse me to interrupt you. But isn't it possible that UBS could have agreed with the PV10 in 2016, when they signed the agreement, and discovered in 2019 that it was flawed without it being fraudulent? And besides, you don't meet the 9B standards for pleading fraud in any event. There are decisions that we cite, mostly in our reply brief, that hold that a stipulation or a contract, that valuation will be according to ongoing concern basis, not a liquidation basis, are enforceable in bankruptcy. This is not a novel notion. No one knows how much oil in the ground is. No one knows what it's worth. These are estimates. They're projections. Transparency is the goal here. We try to be transparent. We were arguing that in subsequent- We contend that we gave this solvency certificate so if they wanted to use it, they would only be able to use it in circumstances in which they adhered to the concept of PV10 values. And what happened was, if they go into bankruptcy, not only do they reject the notion of PV10 values, reject the broader notion of going concern valuations, and they prohibit the trustee from acting on the going concern- Why isn't that argument and, frankly, all of the defenses waived pursuant to 2.02? Because the trustee credit agreements also imply- You say why- I recognize this wasn't the way the district court included it, and 2.02 didn't surface in the district court's decision until the TCA argument was raised on reconsideration. But setting that aside, why doesn't 2.02 constitute, and this is UBS's argument waiver with respect to all of the defenses? Because all of those defenses are based on the notion that UBS gets to take away from the trustee its power. It's not its power. It's statutory obligation under federal law to propose a plan of reorganization if possible. The violation involves UBS using its authority and coercive power and extracting from the Chapter 11 trustee an agreement that no matter what, the Chapter 11 trustee cannot propose a plan of reorganization without UBS's consent. So that's the violation, and I don't think that violation is within the bounds of law because it extracts from the trustee a yielding of its statutory right. I think that that portion of the trustee credit agreements is illegal. It's outside the bounds of the continuing guarantee, and at minimum, it raises tribal issues as to whether we are right, and this was a violation of what was implicit or implied in the trustee credit agreements where if four or five, six paragraphs, all critical paragraphs reference PV10 values with respect to solvency, with respect to engineers, with respect to future value proceedings, with respect to adjustments, that implies or at least creates a discovery issue that warrants discovery as to whether or not there is an implied understanding. We showed you the back and forth between resolving the solvency certificate. There is no doubt that this agreement could only have gone forward if we were representing that only going concern values would be a basis for a solvency, and it's contrary to the essence of what we agreed to when they go into bankruptcy court and reject the whole notion of going concern values and insist on an immediate liquidation. Thank you, counsel. Do I still have the two minutes? You have two minutes for rebuttal. Yes, for rebuttal. Okay, thank you. Yes. We'll hear now from Mr. Cantor. Thank you, and good morning, and may it please the court, Daniel Cantor for appellee UBS AG London Branch. The district court's judgment in favor of UBS should be affirmed because there is no dispute that UBS established a prima facie case that GIT is liable under the guarantees, and GIT has offered no valid defense, counterclaim, or any other reason for reversing the judgment, and I guess I should be clear. We always refer to GRECA integrated as GIT. I realize that hadn't come up previously in the argument, but I will probably invariably refer to them that way. Either that or GIT. GIT. We could go with GIT if you'd like. Absolutely. Your Honor, this really should be the simplest of cases. This is- Does 3213 have any bearing on what we need to decide here? It does not, Your Honor. The federal rules- Mr. Court sort of took that on at face value. You seem to argue it below at face value, but we're under the federal rules. The question is whether taking the case in the posture it came, we're in summary judgment. The other side is arguing essentially, this I think is the question, whether they were entitled to discovery prior to the grant of summary judgment. Right, and there's a couple things packed in there. The bottom line is that no, 3213 no longer applies the moment that GIT decided that it wanted to remove this case from state court to federal court. And rule 56 applies. And rule 56 applies, all aspects of it, including 5216. Counsel appealed to suggest that there was something in error about that process from 3213 to 56. And so he opened his remarks. Yes, and he's incorrect in that regard. I mean, the rule is, as Your Honors have stated, the federal court takes the case in the posture in which it stood when it was in the state court. What that means is there's been a motion for summary judgment filed. We don't have to go back and file a complaint or anything like that. If there was discovery that GIT needed in order to oppose our motion for summary judgment, then 56D deals with that specifically. And the language of 56D is what's really important here. You have to show, by declaration the rule says the court cases loosen that up a little bit. But the bottom line is you have to show that there are facts essential to your opposition to the motion that you cannot present because you haven't had discovery. And you need to explain why that is. It's not enough to say there's a dispute of fact here. This case should go to discovery. You have to show that there are facts essential that you can't get to without discovery. And if you had those facts, here's why that would create a question of fact. Your Honor, on merits, is it your position that the waiver, the very, very broad waiver in 2.02 could resolve all of the defenses? I would love to agree with that, Your Honor. I think it gets us a large way there. I would have to say that the implied covenant defense and the fraudulent I would think that those would not be covered by the 2.02 waiver simply because, A, fraudulent inducement would vitiate the contract so the waiver would no longer be in effect. And if they had a valid implied covenant claim, well, that would be part of the contract. So you wouldn't have 2.02 saying you can't make an implied covenant argument. But those arguments are both baseless in any event. Let me start with the implied covenant argument. It's well settled that the implied covenant of good faith and fair dealing can't be used to expand contract rights based on terms that are absent or contrary to the written agreement itself. The case law says that the implied covenant is there to imply terms that are necessary for the effectuation of the purpose of the contract. The easy way to think about it is if you've got terms in a contract but it's not clear on how you carry them out, well, then the implied covenant can provide you with terms that reflect the party's agreement as to how this whole deal was supposed to work. But what you can't do is bring in entirely new provisions into the contract. GIT claims here that there was an implied covenant that UBS would quote unquote adhere to PV10 values in subsequent litigation concerning the guarantees. Their argument starts on shaky ground because there's no reference to PV10 value anywhere in the guarantees at all. Although UBS did agree when they signed the contract, well, I don't think it is in the contract on PV10, but they walked away from that in 2019. Well, I think it's a little more complicated than that on both ends. A, what we did in the credit agreements with the borrowers, not GIT. As I said, the guarantees are silent on PV10 value. But in the credit agreements with the borrowers, they were required to provide us with a solvency certificate. We drafted one up, the typical solvency certificate, provided it to them. And they decided that it didn't work for them. And we said, and this is in the emails that appellant cites and cited below, we said, okay, you draft it. They did. And that's the way the contract went forward. There was no point at which to- And they added PV10 values. I'm sorry, yes. They were the ones that added the phrase, we are solvent. I'm going to get it wrong exactly, but to the effect of we're solvent if you take into account PV10 values for the underlying assets. We needed a solvency certificate. That's how they wanted to represent their solvency. We were going to be entitled to enforce that representation. If it turned out to be false, that's all we needed to do. So to say that we agreed to it- It doesn't make a difference in your argument whether PV10 was relied on or not, finally. No, and by the way, what happened three years later was that an expert witness in a bankruptcy hearing on cash, on the use of cash collateral, provided seven reasons why he had a problem with PV10 value. Three of them went to the nature of PV10 value itself. And that was his expert opinion on whether PV10 value was a good thing or a bad thing. And there's no evidence in the record as to whether we agreed with that in 2019, quite frankly, let alone back in 2016. A good thing or a bad thing in the context of the bankruptcy proceedings. In the context of valuing the assets for the, I'm not a bankruptcy lawyer, Your Honor, but in the context of- I'm just asking you whether this was going on during the bankruptcy proceedings for the borrowers. Yes, this was all going on, if I understood your question. This was all part of the bankruptcy proceedings over whether they could use their cash collateral at the time. And he also had three arguments, however, three points in his affidavit, about the fact that there were changed circumstances from the time when the credit agreement had been signed in 2016 that made PV10 value no longer a good measure of the borrower's assets. So, again, the idea that you could extrapolate from that expert testimony to what UBS supposedly believed in 2016, assume that that belief was contrary to what they are now claiming was a representation based on conduct. And I'll get to the fraudulent inducement claim in a moment if I have time on that. But that's the major fallacy of their entire position here is that both their implied covenant claim and their fraudulent inducement claim are all premised on the notion that UBS somehow committed to GIT that it would use PV10 value in the way that GIT was using it forever, when the only thing that was going on was that they were accepting a solvency certificate as of 2016 to allow a transaction to close, a transaction that was highly beneficial to GIT at the time. So the idea that there's an implied covenant that relates to future behavior, whether UBS would maintain its supposed position on PV10 value in the future, that can't be said to be necessary to effectuate the purpose of the guarantees in 2016. The purpose of the guarantees in 2016 was self-evidently to provide UBS with extra security in the event that the borrowers were not able to live up to their obligations under the credit agreement. In their brief, GIT argues that the implied covenant somehow protects an expectation that UBS would first look to the borrower's collateral if anything went wrong before it looked to the GIT guarantees. The problem with that is that the guarantees expressly provide that UBS can look first to the guarantees without having to foreclose on the borrower's collateral. And obviously, you cannot use the implied covenant to directly contradict. That's 2.09, right? Yes, Your Honor. Okay. Yeah. So GIT also tries to argue that there's an implied covenant to be found in the credit agreements themselves. Now, of course, GIT isn't a party to the credit agreements. And the credit agreement's purpose was to convert the borrower's obligations under the volumetric production payment scheme that was in place prior to 2016 into a straight loan debt deal. And obviously, it was not necessary to the effectuation of that agreement that there be some agreement about using PV10 value in the future. And of course, even if there were such an implied covenant in the credit agreements, GIT doesn't provide us with any reason for taking that implied covenant from an agreement that it was not a party to and somehow shoehorning it into the agreement. GIT says in its brief, I just looked it up, that UBS accepted the PV10 methodology while harboring, this is the quote now from the brief, while harboring an intention to disavow that position when it became convenient to do so. Right. That's conclusory. It's speculative. They don't cite to a single fact. That's what I was going to ask you. To what is it tethered? Nothing. Absolutely. It's hopes and wishes on their part about how they wish the world were, but don't in any way comport with reality, and more importantly for this case, don't in any way comport with anything that they have alleged, either in their counterclaims or in their briefs. And there is certainly nothing in the record to suggest that they sought discovery with respect to that question. They did not. In the limited time I have left, let me just point out again that the declarations that they submitted on summary judgment and the arguments that they made in their briefs were all in the nature of UBS, you have not shown that there is no factual dispute, and therefore summary judgment is improper. They never said, we can't respond to your arguments, UBS, unless we get discovery into X, Y, and Z. And that's the bottom line, Your Honor. Thank you, Mr. Cantor. Thank you. Mr. Berry, you have two minutes for rebuttal. This may be overly simplistic, but I think that if upon removal, federal procedure applied, that that means that you applied the section of Rule 56 that says summary judgment motions can be made, I think it's 30, maybe it's 60 days after completion of discovery. That indicates there should be discovery. But in any event, in pages 24 and 25 of our reply memorandum, we list the places where we request discovery. The fact that we don't make any specific recitation of Rule 56D, that's an elevation of form over substance. But it all goes to damages, what you're pointing to. It goes to the question of whether you need to go beyond the face of the guarantees. And once you go beyond the face of the guarantees, then you open a hornet's nest of not triable issues. We don't need to show triable issues now. We need to show that there's an indicia of potential triable issues that warrant discovery. They say both sides got what they wanted in the negotiations over the solvency certificate and the solvency representation. They got the solvency certificate. We got the reference to PV10 values. We have a right to enforce what we got, which is that PV10 values would be used in accordance with the terms in the trustee credit agreements. The question about whether you can't say that the same circumstances existed in 2019 as it did in 2016, that's agreed. We don't know whether the amount of oil on the ground looks different now, what the company's performance is, what prices are. But the methodology, you can't agree to a methodology. And there's no showing that if they put aside the three circumstances that are fact-based, stick to the methodology, plug in the new inputs using the same methodology, would a liquidation have been necessary in those circumstances? Could they have convinced the trustee to yield its obligation to propose a plan of reorganization if they had used the current inputs with the agreed upon methodology? There is no showing of that. They haven't established that it raises, if not a triable issue, it's an indicia that there may be a triable issue, which is enough to get us discovery. Thank you, counsel. Thank you. We'll hear the next case, which is, and the matter is under advisement. Thank you.